UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
:
VERONICA SESSION, :
:
                             Plaintiff, :         10 Civ. 0298 (SHS)
:
         -against- :         <u>OPINION & ORDER</u>
:
NEW YORK CITY DISTRICT COUNCIL OF :
CARPENTERS, UNITED BROTHERHOOD OF :
CARPENTERS LOCAL 45, and CAULDWELL :
WINGATE COMPANY INC. :
:
:
                          Defendants. :
:
------------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

      Veronica Session brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2000e-17 *et seq.*, as well as pursuant to the New York State and New York City Human Rights Laws against defendants New York City District Council of Carpenters; the United Brotherhood of Carpenters Local 45 (jointly, the "Union defendants"); and the Cauldwell Wingate Company on the grounds that defendants discriminated against her on the basis of her sex. Defendants have moved to dismiss the complaint on the grounds that Session's Title VII claims are time-barred and the Court lacks subject matter jurisdiction over her State and City claims. Defendants' motions are granted.

## I. BACKGROUND

      Unless otherwise noted, the following facts are taken from the complaint, documents attached to it or incorporated by reference in it, as well as facts set forth in plaintiff's opposition papers. *See Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006); *Amofa v. Bronx-Lebanon Hosp. Ctr.*, 05 Civ. 9230, 2006 U.S. Dist. LEXIS 83199, at *6 (S.D.N.Y. Nov. 13, 2006).

A. The Parties

The District Council is a representative body comprised of 11 local trade unions, one of which is Local 45. Plaintiff acted as the District Council's "Shop Steward" at the job site where the alleged discriminatory conduct occurred. (Pl.'s Mem. of Law in Opp. to Union Defs.' Mot. to Dismiss ("Pl.'s Sec. Opp.") at 1; Ex. B to Compl.)[1] Cauldwell was the "Construction Manager" at that job site. (Pl.'s Mem. of Law in Opp. to Cauldwell's Mot. to Dismiss ("Pl.'s Opp.") at 1.)

B. Factual Allegations

In late 2007, Session worked on a construction job at a Commerce Bank located in Flushing, Queens. (Compl. at 2.) While working at that location, Session observed a "collage" of pictures featuring bikini-clad women "bending over" and "pushing their chests out." (Ex. B to Compl.) The collage was "inside the lid of a gangbox labeled Melto 23."[2] (*Id.*) Session also overheard a male worker at the job site tell another male worker to "take off his skirt and put on some pant[s]." (*Id.*) Then, on a separate occasion, she overheard a different male worker say to another that "he was acting worse than a woman." (*Id.*)

Following these incidents, Session spoke to Bob Jones, Cauldwell's "Project Manager" at the Commerce Bank location, about the "inappropriate pictures" she had seen in the gangbox. (*Id.*) She explained to him that the pictures were "offensive," "harassing," and "suggestive," and asked him to remove them from the job site. (*Id.*) In response to that complaint, Jones "approached the guys at the gangbox" and, after viewing the pictures, told Session that "he didn't feel he had the right to tell [the workers] to remove them." (*Id.*)

---

[1] Session has attached five documents to the complaint: a one-page letter that she sent to the EEOC; a nine-page fax that she sent to the Union defendants; and three right-to-sue letters that she received from the EEOC. This opinion will refer to these documents as Exhibits A, B, C, D, and E to the complaint, respectively.

[2] The "gangbox," which is a horizontal locker for storing tools, belonged to a company called "Melto." (SDHR Compl. Form, Ex. 1 to Cauldwell's Mem.; Pl.'s Opp. at 1.) Melto is not a party in this action.

2

Session also contacted the Union defendants about removing the pictures. Specifically, she left three messages on the Union defendants' "Anti Harassment hotline" about "the events" and told Sal Antonucci, Local 45's business representative, that the pictures were "affecting [her] work" and that she "wanted him to look into it." (Pl.'s Sec. Opp. at 1; Ex. B to Compl.; SDHR Compl. Form, Ex. 2 to Union Defs.' Mem.) On December 21, 2007, Antonucci came to the job site and, after Session showed him the gangbox, he stated that "the women [in the pictures] had their clothes on" and "were not in any suggestive positions." (Ex. B to Compl.) Subsequently, plaintiff faxed a letter dated December 24, 2007 to Gary Silverman and Raul Garcia, attorneys for the Union defendants, in which she recounted her discussions with Jones and Antonucci and requested that the Union defendants send "someone from [their] office . . . to the job site" to remove the offending pictures. (*Id.*) Session continued to feel "sexual[l]y harassed and upset until [she] left" the job on January 2, 2008. (SDHR Compl. Form, Ex. 1 to Cauldwell's Mem.)

Almost one year later—on December 26, 2008—Session filed separate discrimination charges against each of the defendants with the New York State Division of Human Rights ("SDHR"). (SDHR Compl. Forms, Exs. 1-2 to Union Defs.' Mem.; Ex. 1 to Cauldwell's Mem.) Session asserted that "[i]n about December 2007 there were sexually harassing pictures in a gangbox . . . [and] [w]hen I complained [to defendants] nothing happened." (SDHR Compl. Form, Ex. 2 to Union Defs.' Mem.) This conduct, she claimed, violated the New York State Human Rights Law, N.Y. Exec. Law § 296, and Title VII. The SDHR dismissed her charges on March 30, 2009, finding, in three separate decisions, that "[a]fter investigation, and following opportunity for review of related information and evidence by the named parties," there was "no probable cause to believe that [defendants] ha[ve] engaged or [are] engaging in the unlawful discriminatory practice complained of." (SDHR Determinations and Orders After Investigation, Exs. 3-4 of Union Defs.' Mem, *see*

3

*also* Dkt. No. 29.)  The SDHR advised Session that she could (1) appeal its rulings to the Supreme Court of the State of New York and also (2) request that the Equal Employment Opportunity Commission ("EEOC") review her Title VII claims.

Session did not appeal those determinations, but she did send a letter dated April 6, 2009 to the EEOC requesting a review of the charges she had previously filed with the SDHR.  (Letter to EEOC, Ex. A to Compl.)  The EEOC dismissed the charges on September 30, 2009, writing that it was "adopt[ing] the findings" of the SDHR and that Session had a right to sue within 90 days.  (Right-to-Sue Letters, Exs. C-E to Compl.)

Plaintiff commenced this action on December 6, 2009.  The complaint alleges that defendants created "a hostile work environment" by "allowing the . . . sexually harassing pictures" to remain at the job site.  (Pl.'s Opp. at 2; Ex. B to Compl.)  It further asserts that the Union defendants "ignore[d] [her] and turn[ed] a blind eye" to her legitimate requests for assistance and "put [her] in the position of less than . . . the men."  (Pl.'s Opp. at 2; Ex. B to Compl.)  As a result of defendants' alleged discriminatory conduct, Session states that she has experienced "extreme stress, emotional turmoil, and lack of sleep."  (Compl. at 4.)  She seeks $5 million dollars in damages and a "change in [defendants'] practices."  (*Id.*)

**II.     DISCUSSION**

  A.  <u>Legal Standard</u>

Defendants move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief and pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

Under Rule 12(b)(6), a court assumes the truth of facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff.  *See Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 154 (2d Cir. 2006).  Where, as here, a plaintiff proceeds *pro se*, the court need construe the pleadings liberally, reading them to "raise the

4

strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (citation omitted). This guidance applies with particular force when a plaintiff's civil rights are at issue. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). However, to survive a motion to dismiss, even a *pro se* plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

Under Rule 12(b)(1), a claim is properly dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate it. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The party invoking federal jurisdiction bears the burden of establishing that it exists." *Sharkey v. Quarantillo*, 541 F.3d 75, 82 (2d Cir. 2008) (citation and internal quotation marks omitted). While the Court must accept as true all material facts alleged in the complaint, it may look beyond the pleadings to determine whether it has subject matter jurisdiction. *See Filetech S.A. v. Fr. Telecom S.A.*, 157 F.3d 922, 932 (2d Cir. 1998).

      B.   <u>Title VII Claims</u>

Before initiating a Title VII action in federal court, a plaintiff must (1) timely file a charge of discrimination with the EEOC or "the equivalent state agency" and (2) obtain a right-to-sue letter from the EEOC. *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 69-70 (2d Cir. 2006) (per curiam). "A Title VII claim is time-barred if the plaintiff, after filing a charge with an appropriate state or local agency, does not file a charge with the EEOC within 300 days after 'the alleged unlawful employment practice'" occurred. *Elmenayer v. ABF Freight Sys.*, 318 F.3d 133, 134 (2d Cir. 2003) (quoting 42 U.S.C. § 2000e-5); *Williams*, 458 F.3d at 69.

In this action, Session alleges that January 2, 2008 was the last day the discriminatory conduct occurred.[3] (Compl. at 3.) Accordingly, the statutory filing period began to run on that date, at the latest, and expired 300 days later, in October 2008. Session did not file charges against defendants with the SDHR or the EEOC until two months after the 300 day period had expired, on December 26, 2008.[4] Thus, plaintiff's charges were not timely filed. And while "filing a timely charge of discrimination . . . is subject to waiver, estoppel, and equitable tolling," *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982), Session has not alleged, nor does the Court find, that any of these grounds are applicable in this action. Thus, Session's Title VII claims must be dismissed as time-barred.

C. Duty of Fair Representation

While on its face the complaint only raises claims pursuant to Title VII and New York State and New York City human rights laws, it could also be construed to assert an additional claim against the Union defendants for breach of their "duty of fair representation." *See Air Line Pilots Assoc. Int'l v. O'Neill*, 499 U.S. 65, 75 (1991). A union breaches this duty when its "conduct toward a [union] member . . . is arbitrary, discriminatory, or in bad faith." *14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456, 1473 (2009). Such a claim is subject to a six-month statute of limitations, *see Del Costello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163-66 (1983); *Eatz v. DME Unit of Local Union Number 3 of Int'l Brotherhood of Electrical Workers*, 794 F.2d 29, 33-34 (2d Cir. 1986); *see also* N.Y.

---

[3] The complaint states that the alleged discriminatory conduct occurred "approximately" between November 15, 2007 and January 2, 2008, and plaintiff also checked a box indicating that defendants are "still committing these acts against [her]." (Compl. at 3.) However, all of the incidents described in the complaint and documents attached to it occurred in late 2007; Session has not alleged any facts from which the Court could infer that defendants engaged in discriminatory conduct after January 2, 2008, her last day at the job site. Moreover, in the charges Session filed with the SDHR, she asserted that the date the "most recent or continuing discrimination took place is 1/2/2008." (*See* SDHR Compls., Exs. 1-2 to Union Defs.' Mem.; Ex. 1 to Cauldwell's Mem.) Accordingly, the Court finds that January 2, 2008 is the end date for the period of alleged discrimination.

[4] On December 26, 2008, Session filed charges with the SDHR, which then forwarded those charges to the EEOC for dual filing purposes. (*See* EEOC Notice of Charge of Discrimination, Exs. 1-2 to Union Defs.' Mem., Ex. 1 to Cauldwell's Mem.)

C.P.L.R. § 217(2)(a) (four-month limitations period for state law claims), which begins to run when the union member knew or reasonably should have known that a breach of the duty of fair representation had occurred, *Eatz*, 794 F.2d at 33; *Dennis v. Local 804, L.B.T. Union*, 07 Civ. 9754, 2009 U.S. Dist. LEXIS 44817, at *9-11 (S.D.N.Y. May 27, 2009).

Here, throughout December 2007, Session repeatedly requested assistance from the Union defendants. In particular, she (1) discussed the offending pictures with Sal Antonucci, the business representative for Local 45, and then personally showed him the gangbox, (2) left messages on the Union defendants' "Anti Harassment hotline," and (3) faxed a letter to the Union defendants in which she implored them to pay "absolute immediate attention" to her concerns. (Ex. B to Compl.) By the time she left the job site on January 2, 2008, Session was—or should have been—aware that the Union defendants did not intend to take any further remedial action. However, plaintiff did not file charges against the Union defendants with the SDHR until December 26, 2008, almost one year later, and did not commence this action until December 6, 2009, almost two years after she had sought the assistance of the Union defendants. This is long after the six-month limitations period had expired. Accordingly, any duty of fair representation claim based on the premise that the Union defendants' conduct was arbitrary or in bad faith is time-barred.

    D.  <u>State and City Claims</u>

Session further asserts claims against defendants pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law, N.Y. City Admin. Code § 8-101 *et seq.* Both laws contain an "election of remedies" provision, which permits litigants to pursue their claims either in an administrative proceeding or in the courts, but not both. Specifically, the State law provides that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . unless such person had filed a

7

complaint hereunder or with any local commission on human rights." N.Y. Exec. L. § 297(9). The City law's election provision contains virtually identical language. *See* N.Y.C. Admin. Code § 8-502(a). Thus, as the Second Circuit has acknowledged, "the [State] and [City] claims, once brought before the [SDHR], may not be brought again as a plenary action in another court."[5] *York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 127 (2d Cir. 2002).

Plaintiff raised State claims with the SDHR based on the same alleged discriminatory conduct at issue in this action. After an investigation, the SDHR dismissed Session's charges against defendants, citing a lack of probable cause. Plaintiff could have—but did not— appeal these rulings to the Supreme Court of the State of New York pursuant to N.Y. Exec. Law § 298. Because Session chose to have the SDHR adjudicate her State law claims, this Court lacks subject matter jurisdiction over those same claims in this action and therefore they must be dismissed. *See Moodie v. Federal Reserve Bank of N.Y.*, 58 F.3d 879, 882 (2d Cir. 1995).

Session did not raise her City claims in the SDHR proceedings. However, the State claims previously asserted and the City claims now raised arise from the exact same alleged discriminatory practices. *See McNulty v. N.Y. City Dep't of Fin.*, 45 F. Supp. 2d 296, 303 (S.D.N.Y. 1999). In such circumstances, courts in this district have "consistently held that [City] claims, even when intentionally or inadvertently omitted at the state level, are nonetheless barred . . . ." *Dinzey v. N.Y. Police Dep't*, 08 Civ. 6450, 2011 U.S. Dist. LEXIS 3286, at *10-11 (S.D.N.Y. Jan. 10, 2011); *see also McNulty*, 45 F. Supp. 2d at 303-04;

---

[5] The "election of remedies" doctrine does not apply when either (1) the SDHR dismissed the complaint for "administrative convenience," *see Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000), or (2) the EEOC filed the complaint with the SDHR "pursuant to the Title VII requirement that all complaints filed directly with the EEOC be referred to the [SDHR]." *Sayed v. Hilton Hotels Corp.*, 07 Civ. 11173, 2008 U.S. Dist. LEXIS 62929, at *11 (S.D.N.Y. Aug. 7, 2008). Neither of these exceptions is applicable here.

*Dipalto v. N.Y. City Off Track Betting Corp.*, 94 Civ. 5773, 1998 U.S. Dist. LEXIS 7984, at *7-8 (S.D.N.Y. May 19, 1998).

Accordingly, the Court dismisses plaintiff's State and City claims for lack of subject matter jurisdiction.

### III. CONCLUSION

For the reasons set forth above, defendants' motions to dismiss the complaint (Dkt. Nos. 6 and 10) are granted.

Dated: New York, New York
February 10, 2011

SO ORDERED:

Sidney H. Stein, U.S.D.J.